Good morning, Your Honor. May it please the Court, my name is Mary Pogalis, and I'm representing the appellant, Khusar Mobley, in this matter. I am here, well I'd like to reserve about five minutes for rebuttal. And I want to make as the key point and sort of an overarching point on this appeal, that there was a singular fact that drove every important aspect of this prosecution. But it was a singular fact that should not have affected anything more than the question of federal jurisdiction. And that is the fact that the victim, the This was a prosecution because of that fact that became engulfed in a highly charged, pretty emotional atmosphere that required from the prosecution, and I can say this as someone who was a federal prosecutor for almost two decades, meticulous care that it not become the arguments, the cold evaluation of facts that was required. And certainly it should not have driven the sentencing. Can I confess some confusion? This is like your overarching point that you're leading with. What argument does this relate to? It relates to the argument of Mr. Mobley's knowledge, whether or not he agreed, whether or not he reached an agreement with the charged co-conspirators to rob and assault. Okay. But so that you're talking about the conspiracy charge. Yes. The other offense is the knowledge we know as a matter of settled law. It still matters in the assault charge because, well, it doesn't. It does not. The Supreme Court has already resolved. That's what I was trying to get to. Right. No one. I know there's an open legal question as to the conspiracy charge. So is that what you're trying to focus our attention on? At this point, it's the conspiracy charge that I'm speaking to. I think of all the charges against Mr. Mobley, that one really must be reversed because there was no proof that he ever agreed with anyone to either assault or rob Agent Palmer or anyone who was likely to be a Federal officer. And I refer the Court to the United States Supreme Court decision in FEOLA, where there's a very applicable section on that. It's at page 695, 696, where the Court specifically says that if the object, the person of the intended attack, is likely to be a Federal officer or would have been a Federal officer had it succeeded, that creates a sufficient threat to Federal personnel and interests to give rise to Federal jurisdiction. If, however, the other side of that is, the object of the agreement was not someone who would have turned out to be a Federal official, then that wasn't the agreement. But who in there – but this – but it sort of goes to these are undercover operations, and whether it's an undercover drug sale, undercover arms sale, or whatever, I mean, I'm assume – I give your client the intelligence that if he'd known that the undercover person was, in fact, a Federal agent, of course he wouldn't have done that, or he would have been horrified. I mean, it wouldn't – they would never have reached such an agreement. But to say that it can't then be a crime because of that, because he didn't know he was being stung, as it were, it just, you know, I mean, it was normally thinking that it was just going to be a sale or what do you call it, a by-walk or something along those lines, but then the facts allege that then he decided to make it a robbery, but, oops, he didn't know it was a Federal agent, and then it goes downhill from there. So I don't know that's critical. That's critical. And so how – somehow doesn't that make – that's not a crime, then? It's not the conspiracy that was charged, that he was on notice of, or that he was defended against. The conspiracy that was charged was that he, with Otis Mobley and DeMars Hutchinson, conspired to forcibly assault and rob an undercover agent employed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives. They did not conspire or reach that agreement. And the agreement involved in the conspiracy must precede the crime. I understand that the substantive crime, especially because the informant fled the car immediately, the only person left in the car was the agent, so I understand that the substantive crime was otherwise than the agreement, but that's the point. You cannot have it both ways. Well, I understand how you can construe it the way you did, but, of course, you've got other people that are determining what the facts mean. But as I understand it, Mobley negotiated the deal with the biologic grenade launcher, which, admittedly, is not robbery, but he negotiated it. He got a prize. He borrowed a gun from SK to take to the meeting. He and Hutchinson entered the back seat. We've all seen the video on that. Within seconds, he told him to empty his pockets. And the reality is that the fact that he had a gun could at least lead a trier of fact to conclude that this wasn't just going to be some garden variety, you know, target exchange. You know, he brought a gun for some reason. Yes. And the reason... And he conspired with somebody else to enter the car. And why couldn't the jury assume that there was a conspiracy to use the gun to take the money, particularly since there was no grenade launcher that was brought, as I understand it? They just came with the gun. Well, the jury can't assume anything. There has to be... I understand that, but they... There has to be evidence. They can infer. They can infer. They can infer that by agreeing on the money, they knew he was going to have money. He brings a gun. He brings somebody there, and right away they jump on him. They can certainly infer, can they not, that there was a pre-existing agreement between those two to jump what turned out to be an agent and get the $1,000. They didn't bring a grenade launcher. Is that correct? No. No evidence. No, there was no grenade launcher. Okay, so why did they go? They weren't going to consummate the sale because they didn't have anything to sell. The agent thought they were going to bring the grenade launcher, right? Well, I think you're, with all due respect, what the court is doing is the same confusion that happened at the trial. Kusar Mobli, who is the appellant here, came with a firearm, the sale of which he had already negotiated a week before to that informant, not to anyone who was going to turn out to be a federal agent, but to a street thug that he knew and that he believed to be a private actor. He was going to sell him the gun. Wasn't there testimony, though, that he was also, whatever, about the gun, he was going to sell a grenade launcher for $1,000? No. The entirety of the grenade launcher negotiations were conducted by his older cousin, Otis Mobli. He had, there is no evidence whatsoever that he had anything to do with that other than the fact that Otis Mobli arranged all of this. Separately, Kusar Mobli had arranged the sale of that firearm. And that's documented. How much was the firearm going to be sold for? $700. Okay. Well, they had $1,000. Are you saying that the evidence does not permit the jury to infer that your client knew that the agent had $1,000 in his possession? I don't know how they could infer that. He was there to sell the gun to McGrew, to Aaron McGrew. That's what he was there for. And the evidence corroborates that with text messages, with the Aaron McGrew admitted it on the stand. I mean, I refer you to, I have the entire portion of the testimony where he admits that he had the separate. Well, let me just. Here it is on page 22. On SCR 7475 and on 84, Otis Mobli negotiated the deal with McGrew to buy a grenade launcher for $1,000. Otis Mobli. Otis, right. His older cousin. That's right. So Otis agreed with McGrew on the time, date, place, location it would take place. He then confirmed with McGrew via text that he really did have the money to satisfy the paranoia of his brother. No, he did not say that. First of all, he didn't have a brother who was there. He said, my bro. Bro. We don't know who that was. Oh, I see. We don't. There was no evidence as to who that was. I refer you to page 22 of my opening brief at footnote 4 where there is clear testimony from Aaron McGrew asked, and then on March 20th, appellant, my client, texted you again and says, how much do you want to spend if I find you some guns? McGrew says yes. On the 20th, he says $700. And the $700 was for a gun, trial counsel asked Mr. McGrew. That $700 was for a gun, correct? And McGrew says, correct. Okay, wasn't for a grenade launcher. You had negotiated with CUSAR to buy a gun for $700. Fair enough. Answer from Aaron McGrew, fair enough. And it was corroborated with text messages that were put into evidence. There's no question. There's really no question, but that negotiation happened. For the jury to disregard all of this evidence in favor of what basically is an assumption on their part, that something completely different was going on in CUSAR Mobley's head. Do you want to reserve the balance of your time? I'm going to reserve it now. I see where I am. Okay. I got through page 1 of my eight notes, so I'll be back. Well, fortunately, that's why we have briefs. May it please the Court. Good morning. Good morning, Your Honors. Owen Mardekin for the United States. Sufficient evidence supported the defendant's convictions in this case. A Federal agent testified that he had Federal money. The jury had ample evidence to conclude that the Mobley defendant and his accomplices were working together with the aim of robbing someone. And a video leaves little room for doubt. What was that evidence? Your opposing counsel has suggested that we've got the wrong Mobley here, that it's Otis that was involved in this, not his brother. What evidence were in the record? Do we find evidence that the defendant in this case conspired to rob the Federal agent knowing that he had $1,000? What would you point us to? All right. Well, I'd begin with what Your Honor pointed out earlier. Page 82 of the supplemental excerpts of record where Otis Mobley says when he's dealing with McGrew, because there's no question that they are dealing about the supposed grenade launcher deal. They, meaning both? They, meaning Otis Mobley and Mr. McGrew, are dealing about it. So that much, I guess, is beyond dispute. Then during that conversation, there's the comment, my bro's paranoid. My bro needs to know that you're serious. So clearly, he's bringing someone else in. There's no question that he's referring to a third party who appears to be the one who's really going to bring the goods and who wants to know that the money is coming to the other end of the deal. Second of all, there's evidence from Kuzar Mobley's testimony, page 153 at the supplemental excerpts of record, where McGrew and Kuzar Mobley are in contact, that there are numerous calls. All right. So McGrew says it's clear that these three parties then are also in contact. Then there's testimony. And those three parties are McGrew? I'm sorry, the two Mobleys. Two Mobleys. Otis Mobley, Kuzar Mobley, and Aaron McGrew. So those three. Then, Agent Palmer testifies, this is page 11 of the supplemental excerpts of record. He testifies that he was present during the speakerphone conversation involving himself, McGrew, and Otis Mobley, where they're setting up the terms of the deal. That who's going to show up when and where. Then, McGrew, there's a text message, a 72, supplemental excerpts of record, that McGrew testifies about. He says he texts Otis Mobley, he, this third party, is on his way to my house. So everyone knows there are multiple parties involved in this deal, including both of the Mobley cousins, Mr. McGrew, and the other person who turns out to be Agent Palmer. And then, at page 85 of the supplemental excerpts of record, this again is McGrew's testimony. He testifies that when they got to the deal, everyone introduced each other first. So this is before anyone gets in the car, and before the actual robbery goes down, everyone's introducing everyone else. So it's no surprise at that point that everyone is there to get a deal done. Now, of course, the additional evidence that this is an actual robbery that was agreed to is the texted photograph of the grenade launcher. So clearly, Otis Mobley is trying to lead McGrew on to believe that there is this grenade launcher that he's going to get for $1,000, and the fact that no grenade launcher was brought to the scene. Everyone knew that this was not about this deal to sell a grenade launcher. And I don't think it was a surprise that Kuzar Mobley is asking Agent Palmer to empty his pockets, and that Kuzar Mobley is pulling the gun on Agent Palmer. Now, in the reply brief, the defendant argues that, well, that Aaron McGrew had run out of the car at that point, so there was no one else to pull a gun on, but that's actually not the record. And the defendant himself testifies, and this is Kuzar Mobley's testimony. He testifies that- Where is the record? I'm sorry, I'm just. Missed that. I'm sorry, it's page 222 of the supplemental excerpts of record. This is Kuzar Mobley's testimony. He says that when he came over the seat with his gun, and that Agent Palmer batted the gun away, that McGrew was still in the car. So everyone was in the car. The jury heard all this testimony. It was entitled to infer from it that there was a reason, after all this other evidence, that Kuzar Mobley came over the seat towards Palmer. And that that was a robbery. Well, I think that I'm understanding Appellant's counsel to say that if Mr. Mobley and his co-conspirators intended only to bribe a private citizen of privately held funds, that the conspiracy should be reversed. Because they obviously didn't know he was a federal agent. Yes. That's a whole undercover thing. So is that true? No. That's legally, there's no way that FIOLA can be read to permit that. But I think she's arguing that. Yes, and I don't think, I think that's contrary to FIOLA. That FIOLA cannot be read to say that there can be, that the mens rea for conspiracy to rob someone who turns out to be a federal officer, to assault someone who turns out to be a federal officer, because it's 111 in that case, is somehow greater than the mens rea required for the substantive offense of robbing someone, or assaulting someone who turns out to be a federal officer. I think you're right about that. FIOLA actually has already resolved the mens re for the conspiracy to assault a federal officer question. But it did not resolve the question for the other prong of the conspiracy. The jury was charged with either or, unanimously agree on one or the other. And we don't know which theory they picked, right? The robbery of federal money, Your Honor is saying. And we have the Seventh Circuit's, I think it's the Seventh Circuit's decision in Sogato that goes the other way on that. If we were to follow Sogato instead of the Eleventh Circuit, the government's second theory for the conspiracy conviction would be invalid. And I guess my problem with the government's case on that charge is if in the situation where we don't know which theory the jury ultimately unanimously agreed on, are we able to sustain the conviction, I think it's Hedgepeth as the main Supreme Court case on that issue. But I'd like to hear your response. If we were to assume that the conspiracy to obtain federal money conviction was not going to be valid here, theory was not going to be valid here, how could we nonetheless affirm on the conspiracy conviction? Well, I would say that would be a problem if this court were to follow Sogato, and say that that case is persuasive enough that it's going to consider it binding. But Sogato is different, and actually makes a distinction about how field applies in that case. Because of a government strategy that happened in that case, in Sogato there was no money, federal or otherwise. So that was the government's problem in that case. What the government then tried to do is back the conspiracy up, and say, well, the overt acts in this conspiracy don't involve the actual robbery of the money. So therefore, it's really a different kind of conspiracy. It's not a conspiracy that involves the actual robbery of the money. And the court in Sogato says, well, not so fast, because that may solve the problem of not having the money. But then you have a new mens rea problem. Because if you don't have the robbery, then you have this kind of inchoate conspiracy, and there has to be an agreement. Then there's a mens rea issue, because then what are they exactly agreeing to do if the overt act isn't the actual robbery? It's just, it's somehow completed before the robbery took place. So there was a very special situation there, and the government tried to get out of it by backing the conspiracy up, and saying, well, this is a different kind of conspiracy. It does not involve the robbery. Here, it's very clear this was charged to include the robbery. The actual robbery is an overt act. So I think it brings it back to Fiola and not Sogato. Okay, maybe I need to reread the Seventh Circuit's decision, because I didn't read it that way. I read it as having resolved the mens rea question against the government. But let me go back to something you said before. Let's just assume that we were to find that a mens rea, for purposes of conspiracy to obtain federal money, the defendant has to know that it's federal money. Let's assume that we were going to find that. You said that you thought that the conspiracy conviction in this case would be vulnerable to attack, and I guess I'm not sure why are you conceding that? Let me back up, because I want to be careful about how I put this. I'm not conceding anything about this case, because I do think that it would be contrary to Fiola for this court to reach that holding. I think that Sogato would be wrong. Assume that we don't agree with you on that. That's all, I just, I'm trying to figure out what we have to resolve in terms of the legal issues to decide this case versus what we don't. So let's assume that we were to rule against you on that point. The jury was nonetheless charged with alternative theories on which it could convict for conspiracy. Why does the, why would the conviction need to be reversed just because one of those theories was potentially invalid? Well, I don't think it would need to be reversed in this case, because the verdict is actually in the conjunctive. So the jury, if this court looks at the verdict form, in this case, the conspiracy charge piece of that is conjunctive. You found robbery of federal money and assault on a federal officer. So I think if you lose one of those, because this court were to come out that way, you would still have the other one. Unlike if it were purely- I don't have the verdict form in front of me, so what does it say? It's charged in the conjunctive. It said, do you find that the defendant conspired to, the defendants conspired to assault a federal officer and rob money belonging to the United States or- The jury instruction I do have in front of me, and it's definitely in the disjunctive. The jury instruction's in the disjunctive, and it has a unanimity portion in it. But the verdict form is actually in the conjunctive. So- So your position is that notwithstanding the jury instruction, the jury actually found both? That's what they said they found. Yes. Okay. But I don't think the court needs to get even halfway down that road, because I think that if Salgado were actually read that way as simply saying, well, the 2114A conspiracy is fundamentally different from the 111A conspiracy, because you have to prove that it's federal money, that would be contrary to Fiola. Because Fiola says a little bit more than the narrow holding. Fiola says that the offender in this kind of a case takes the victim as he finds it. And the reason for this statute, that the statute was passed, 111 in that case, is to protect federal agents in the performance of their duties, even if they're undercover. 2114A is to protect people carrying federal money. No, well, no. I mean, the statute could be violated if there's no people involved. It just has to be property taken. It could be taken from a cabin. Right, but- So the argument for why the 111 charge would be different from the 2114 charge is simply that Fiola created a relaxation of the mens rea requirement because of the special interest the federal government has in protecting federal officers. There's no such need for a special protection of property or money. I think I disagree, and I think that Fernandez says something different. This court and Fernandez, that the purpose of 2114A is to protect people who are carrying the mail and who are carrying federal money. I mean, the way that it's written is the robbery of the money or mail. But the reason Congress passed it was to protect the people, I mean, not the money. It obviously wouldn't make sense, well, to editorialize in that sense. And, you know, this court didn't reach the issue directly in Fernandez, but it certainly can do that here and stay comfortably within Fiola. I'd like to talk briefly about one factual issue, the fact that there is no evidence that Palmer had the money on him, that is, the argument is just wrong. Page 42 of the supplemental excerpts of record, Palmer testifies that he said, I'm emptying out my pockets because I was going to give them the money. So clearly, he had the money on him. The sentencing issue, this mastermind comment wasn't really part of the judge's imposition of sentence. It was done, it was said in response to the defense argument that he was just subject to peer pressure, which the judge just was not willing to believe. But even had it been part of that sentence, it wasn't an abuse of discretion for the judge to read, to make that conclusion based on the records where Otis Mobley, you know, told McGrew he was setting up this deal for this other person, my bro. Mobley, Kuzar said that he told Otis Mobley to drive him to this deal. Mobley seems to be driving the situation on the video when he gets there. He's the one with the gun. He's the one telling the agent what to do. And he testifies that his other co-conspirator, Hutcherson, that he had told him to get out of the car and come with him. So that's all at pages 162, 163, his testimony about how the deal went down. You're basically out of time. Well, I think then that's a good point for me to ask for the support to affirm in this case. Thank you. Okay. Thank you. First, Judge Watford, let me address your question. If, in fact, there was an unconstitutionally vague verdict because there were two possible grounds, one of which was unlawful, the U.S. Supreme Court decisions in Yates and Griffin would call for that to be reversed. Well, what about the conjunctive verdict form? I don't have it in front of me, but is that accurate, that the jury came back with a verdict that said we find both theories to support the conspiracy conviction? Well, it was pled in the alternative. I don't know. Usually, juries are told you don't know what the verdict form says or you do know. No, no, I know what the verdict form says. And what does the verdict form say? I'm not clear that that would prevent one of those grounds was unlawful. What does it say? Does it say what he said it said? Yes. Okay. Well, then it found both, and one of them we know is valid, because I just think you're wrong in reading FIOLA if you think that it left open the question, mens rea, as to the conspiracy charge. I don't think I am wrong because we're talking two different things. You're talking about mens rea. I'm talking about the agreement, that the alleged agreement never happened, which was, as counsel said, you take the victim right as you find him. Well, the victim, who was the object of this agreement, was not anyone who turned out to be a Federal officer. It was Aaron McGrew all the way through. They didn't reach the concern. Hang on, hang on. You're saying that the agreement that was formed was to rob the Aaron McGrew? Yes. Not whoever showed up as the other party? Right. Okay. The agreement was to rob Aaron McGrew. Okay. Well, that's not a Federal crime. That's just a straight sufficiency question. The jury could probably have reasonably determined otherwise, right, on these facts. Could have determined that the agreement was otherwise? I don't believe they could reasonably have found that. And you are conceding that there was an agreement to rob Aaron McGrew? No. I'm saying, if you want to, that the evidence was that there was enough evidence to show that agreement. It should have been prosecuted in State court. It wasn't a Federal crime. But you just said before that there was an agreement to rob him. That's what the agreement is. And you're trying to distinguish that between him and a Federal agent. I'm saying, if there was an agreement, and the jury obviously found there was. You're amending your statement, then. I'm clarifying my statement. Okay. If there was an agreement, the agreement was directed to a private actor. And FIOLA specifically talks about that and would specifically exempt that. And I refer you again to FIOLA, page 695 to 696, where the Supreme Court addresses that. And I would also refer you to the transcript at page 646, the reporter's transcript in my opening brief on page 16, I'm sorry, the reply brief. The prosecutor's arguments to the jury were Otis Mobley, another cousin, set the whole deal up, the fake deal for a grenade launcher that was not here. Otis Mobley set up that fake grenade launcher transaction. Otis Mobley set up a fake grenade launcher deal to lure in the victim for $1,000. He drove his two cousins, the two gunmen, to the robbery. He was the one who set up the deal. I don't think that it's appropriate for the government to come in here at this late stage and switch its theory to something else. The government always. But again, aren't you hoisting yourself on your own batard? Because even by your own language, you're saying, Otis set this up and then he got the other people involved. So that ties the loop, it's a conspiracy. He drove them there. Well, they didn't just talk about chewing gum. They were going to rob somebody, right? Well that is, that's your. That's certainly what the video shows. They didn't just sit there and chew gum. They moved right in. Your client moved right in, you can see it. He produced the gun that he had arranged with Aaron McGrew to bring and sell to him that day. Right. And the jury. That's the defense. The jury obviously. That was the evidence. The jury obviously rejected that. I understand, and I'm saying that it was unreasonable to do so, and it was largely based on who the victim was. One last question. Can I ask you one last question, because your time is up? Yeah, my time is up. Why do you tell me this? Why wouldn't the jury have been reasonable in determining that the parties to this agreement didn't just conspire to rob only Aaron McGrew, I can't remember the names. Aaron McGrew. But that they were going to rob whoever showed up, and that that explains why your client drew the gun on the agent. The problem is there's no evidence of that. The evidence is that the agreement was reached with Aaron McGrew and that he was the person they were communicating with, the person who said he was going to buy them. But I'm saying the video shows pretty clearly, at least as the jury could reasonably find, that your client didn't draw the gun and pointed at the person that you say they conspired to rob. He pointed at the other person and ultimately told that person to empty his car. Aaron McGrew testified that the second he saw that gun, he was out the door, because he didn't realize that it was Kusar Mobley he'd been negotiating with. He hadn't made that connection himself, so he wasn't expecting that. He fled. There was only one person left in the car. All right. Unless any of my colleagues have additional questions, I think we have both of your arguments in mind. Thank you, Your Honor. This matter stands submitted, and we are in recess for the day. All rise. The court is in session. Stand at ease. Stand at ease.
judges: Callahan, Smith, Watford